# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| Marco Antonio Agredano Monjaraz, Isela Flores Hernandez, and AAF (a minor), | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No: 2:19-03052-MBS |
| vs. | ) ) ) | **ORDER AND OPINION** |
| Ken Cuccinelli, Interim Director, United States Citizenship and Immigration Services, To Be Named, Acting Secretary, United States Department of Homeland Security, and Donald Neufeld, Associate Director of Service Center Operations, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the court on the motion to dismiss filed by Defendants Ken Cuccinelli, Interim Director of the United States Citizenship and Immigration Services ("USCIS"), To be Named, Acting Secretary, United States Department of Homeland Security, and Donald Neufeld, Associate Director of Service Center Operations (collectively "Defendants"). ECF No. 7. Plaintiffs Marco Antonio Agredano Monjaraz, Isela Flores Hernandez, and AAF, a minor, (collectively "Plaintiffs") filed their response in opposition to Defendants' Motion to Dismiss, ECF No. 11, to which Defendants filed a reply, ECF No. 12. The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C § 1331. For the reasons explained below, Defendants' Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

<u>U Visa Program</u>

In 2000 Congress created the U nonimmigrant visa ("U Visa") with the passage of the Victims of Trafficking and Violence Protection Act.  Pub. L. No. 106–386, 114 Stat. 1464, codified at 8 U.S.C. § 1101(a)(15)(U).  Set aside for immigrant victims of serious crimes, Congress intended the U Visa program to strengthen the ability of law enforcement agencies to detect, investigate, and prosecute crimes, while also protecting the victims of those crimes. <u>Victims of Criminal Activity: U Nonimmigrant Status</u>, U.S. Citizenship and Immigration Services (August 8, 2018, 11:48 AM), https://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes/victims-criminal-activity-u-nonimmigrant-status/victims-criminal-activity-u-nonimmigrant-status.   In  order  for a petitioner to  qualify for the U Visa,  the Department of Homeland Security ("DHS") must determine that: (1) the petitioner has "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity"; (2) the petitioner "possesses information concerning [the] criminal activity"; (3) the petitioner "has been, is, or is likely to be helpful" to government officials regarding the criminal activity; and, (4) the criminal activity at issue "occurred in the United States." 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV).  A "principal" petitioner may file one or more "derivative" petitions on behalf of certain family members.  8 U.S.C. § 1101(a)(15)(U)(ii); 8 C.F.R. § 214.14(f)(2).  A petitioner must be admissible to the United States or obtain a waiver of inadmissibility.  8 U.S.C. § 1182(a); 8 C.F.R. § 214.1(a)(3)(i).  The petitioner bears the burden of establishing eligibility. 8 C.F.R. § 214.14(c)(4).

In 2002, Congress created USCIS and assigned it the following functions: (1) adjudications of immigrant visa petitions; (2) adjudications of naturalization petitions; (3)

adjudications of asylum and refugee applications; (4) adjudications performed at service centers; and (5) "all other adjudications performed by the Immigration and Naturalization Service immediately before the effective date specified in section 455." Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat 2135 (2002).

To obtain a U Visa, the petitioner must file a Petition for U Nonimmigrant Status (Form I-918), a biometric fee or fee waiver request, and "initial evidence" in accordance with instructions to Form I-918. 8 C.F.R. § 214.14(c)(1). The petitioner must also submit a Form I-918, Supplement B (U Nonimmigrant Status Certification), which is a form signed by a designated law enforcement official within six months immediately preceding the submission of petitioner's application to the USCIS. 8 C.F.R. § 214.14(c)(2)(i). This form certifies that the petitioner has been, is being, or is likely to be helpful to the investigation or prosecution of qualifying criminal activity. 8 C.F.R. § 214.14(c)(2)(i). Furthermore, the petitioner must submit documentation that she has suffered direct or proximate harm from the criminal activity; materials related to the petitioner's physical or mental abuse as a victim of the criminal activity; information the petitioner possesses regarding the criminal activity; evidence of the petitioner's helpfulness to law enforcement; evidence that the criminal activity violated United States law or occurred in the United States; and a personal statement. *See* 8 C.F.R. §§ 214.14(a)(14), (b), (c)(2). Congress enacted a statutory cap of 10,000 U-Visas each fiscal year. 8 U.S.C. § 1184(p)(2)(A).

Defendants assert that Congress directed the Secretary of DHS to promulgate regulations for the U Visa statute, ECF No. 7 at 4 (citing Violence Against Women Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960, 3066 (2006)), and that DHS did so in 2007, giving USCIS sole jurisdiction over U Visa petitions, *id.* (citing 8 C.F.R. § 214.14).

On October 17, 2007, USCIS published a rule creating a regulatory waiting list procedure to accommodate meritorious U Visa petitions that exceed the annual statutory cap.  8 C.F.R. § 214.14(d)(2).  The waiting list provision reads:

> All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement.  Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority. In the next fiscal year, USCIS will issue a number to each petition on the waiting list, in the order of highest priority, providing the petitioner remains admissible and eligible for U nonimmigrant status. After U-1 nonimmigrant status has been issued to qualifying petitioners on the waiting list, any remaining U-1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed.  USCIS will grant deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list. USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members.

8 C.F.R. § 214.14(d)(2).

On December 23, 2008, Congress enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act (the "TVPRA"), Pub. L. 110-457, 122 Stat. 5044. The TVPRA specifies that the "Secretary [of DHS] may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. § 1184(p)(6). The employment authorization document allows U Visa applicants to seek lawful employment while they await adjudication of their petitions.

Up until January 2017, the regulation governing authorization of employment provided that "USCIS will adjudicate the [employment authorization document] application within 90 days from the date of receipt of the application," and additionally that "[f]ailure to complete the adjudication within 90 days will result in the grant of an employment authorization document for

a period not to exceed 240 days." 8 C.F.R. § 274a.13(d).[1] The U status application form allows

for U status principal applicants to request work authorization on the same form used to request

U status. This one-step process comported with the rationale in the contemporaneous

rulemaking:

> For principal aliens seeking their first [work authorization] based upon U
> nonimmigrant status, USCIS will use the information contained in the Form I-918
> to automatically generate [work authorization], such that a separate request for
> [work authorization] is not necessary . . . . USCIS has designed the Form I-918 so
> that it serves the dual purpose of requesting U nonimmigrant status and
> employment authorization to streamline the application process. Therefore,
> principal aliens will not have to file additional paperwork to obtain an initial
> [work authorization].

New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status,

72 Fed. Reg. 53,014 (Sep. 17, 2007).

<u>Factual and Procedural History</u>

Plaintiff Agredano is a citizen of Mexico. He was the victim of felonious assault, and he

reported the crime to law enforcement and assisted law enforcement in the investigation of the

crime. ECF No. 1 at ¶ 2. Following these events, Plaintiff Agredano filed an I-918, Petition for

U Nonimmigrant Status ("I-918 Petition"), in which he requested work authorization, also

known as an Employment Authorization Document ("EAD"),[2] and he filed for derivative

---

[1] A revised version of section 274a.13(d) went into effect on January 17, 2017, after Plaintiff
Agredano had filed his petition. *See* "Retention of EB-1, EB-2, and EB-3 Immigrant Workers
and Program Improvements Affecting High-Skilled Nonimmigrant Workers," 81 Fed. Reg.
82398 (Nov. 18, 2016). As discussed in more detail below, Defendants contend the court should
apply the current, revised version of the regulation rather than the version that was in effect at the
time Plaintiffs filed their petition. Unless otherwise noted, the court refers to former 8 C.F.R. §
274a.13(d) as "section 274a.13(d)," and current 8 C.F.R. § 274a.13(d) as "revised section
274a.13(d)."
[2] Plaintiff alleges he requested work authorization via the one-step process in completing the I-
918 Petition and also by submitting a "separate work authorization application for work
permission under deferred action eligibility." ECF No. 1 at ¶¶ 81, 82.

benefits for his wife, Plaintiff Hernandez, and for his son, Plaintiff AAF.  ECF No. 1 at ¶ 2.

USCIS received the application package on November 1, 2016.  ECF No. 1 at ¶ 3.  Plaintiff

alleges that his application package has been pending at the Vermont Service Center for 35

months with no decision regarding eligibility for placement on the wait list or issuance of an

EAD.

Plaintiffs initiated this action on October 28, 2019, by filing a complaint asserting the

following: USCIS unreasonably delayed adjudicating Plaintiff Agredano's U Visa application

and granting his employment authorization in violation of the Administrative Procedure Act

("APA"), 5 U.S.C. § 555(b); and USCIS has unreasonably delayed the initial prima facie

determination of the U Visa application, violating Plaintiffs' due process rights.  ECF No. 1.

Plaintiffs seek an order from the court declaring it is unreasonable for USCIS to delay for 35

months its decision to (1) place a U Visa petitioner on the wait list, and (2) grant a U Visa

petitioner work authorization.  Plaintiffs also seek an order compelling USCIS to render a

decision about wait list placement and work authorization within seven days of determining the

existence of an unreasonable delay.  Finally, Plaintiffs seek reimbursement for reasonable

attorney's fees and the entire cost of litigation under the Equal Access to Justice Act.[3]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a cause of

action based on lack of subject matter jurisdiction.  "Federal courts are not courts of general

jurisdiction; they have only the power that is authorized by Article III of the Constitution and the

statutes enacted by Congress pursuant thereto."  *Brickwood Contractors, Inc. v. Datanet*

---

[3] Plaintiffs in two similar cases filed substantively identical complaints seeking the same relief. *Aguilar v. Cuccinelli*, No. 2:19-cv-3051 (D.S.C. Oct. 28, 2019); *Herrera v. Cuccinelli*, No. 2:19-cv-3049 (D.S.C. Oct. 28, 2019).

*Engineering, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (quoting *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986)). Challenges to jurisdiction under Rule 12(b)(1) can be raised in two different ways: facial attacks and factual attacks. *Thigpen v. United States,* 800 F.2d 393, 401 n.15 (4th Cir. 1986) (citing *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)), *disagreed with on other grounds, Sheridan v. United States,* 487 U.S. 392 (1988). A facial attack questions the sufficiency of the complaint. *Id.* When presented with this argument, the court must accept the allegations in the complaint "as true, and materials outside the pleadings are not considered." *Id.* If the court lacks subject matter jurisdiction, it has no authority to evaluate whether a plaintiff's complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94 (1997) (instructing that courts should not assume jurisdiction for the purpose of deciding the merits).

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint. *Schatz v. Rosenberg*, 943 F.2d 455, 489 (4th Cir. 1991). While the complaint need not be minutely detailed, it must provide enough factual details to put the opposing party on fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In order to withstand a motion to dismiss, a complaint must contain factual content that allows the court to reasonably infer the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009). "Facts that are 'merely consistent with' liability do not establish a plausible claim to relief." *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678). The court must accept the allegations in the complaint as true, and all reasonable factual inferences must be drawn in favor

of the party opposing the motion. *Id.* at 679. If the court determines that those factual

allegations can "plausibly give rise to an entitlement to relief," dismissal is not warranted. *Id.*

To determine plausibility, a court is to "draw on its judicial experience and common sense." *Id.*

"But where the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled

to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

### I.    Subject Matter Jurisdiction

The APA provides that, "[w]ith due regard for the convenience and necessity of the

parties or their representatives and within a reasonable time, each agency shall proceed to

conclude a matter presented to it." 5 U.S.C. § 555(b). Section 706 of the APA states that the

reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." 5

U.S.C. § 706(1). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an

agency failed to take a *discrete* agency action that it is *required to take.*" *Norton v. S. Utah*

*Wilderness All.*, 542 U.S. 55, 64, (2004) (emphasis in original). Courts have jurisdiction under

the APA to hear claims brought against an agency for unreasonable delay so long as judicial

review is not precluded by statute and agency action is not committed to agency discretion by

law. 5 U.S.C. §§ 701(a)(1), (2); *see Asheville Tobacco Bd. of Trade, Inc. v. Fed. Trade Comm'n,*

294 F.2d 619, 627 (4th Cir. 1961).

Defendants argue the court lacks jurisdiction over the APA claim because "USCIS's pace

of adjudication, for both U Visa petitions and employment authorization applications, is wholly

within its discretion," and the statute governing employment authorization claims, [8 U.S.C. §

1184(p)(6),] "is discretionary on its face." ECF No. 7 at 2. Defendants also argue that the

former version of 8 C.F.R. § 274a.13(d), in effect prior to 2017, does not apply and in any event does not provide Plaintiffs the relief they seek.

Plaintiffs respond that the court has subject matter jurisdiction because 8 U.S.C. § 1184(p)(6) "does not contain specifying language as to discretion regarding the timing of a decision for an employment authorization document." ECF No. 11 at 2. They emphasize that they seek a decision on their application package and "not review of a denial of relief." ECF No. 11 at 4. They also contend that 8 C.F.R. § 274a.13(d) controlled when they applied for the EAD on November 1, 2016 and that completion of Plaintiff Agredano's background check triggered the regulation's 90-day processing period. ECF No. 11 at 6-7.

### A. Statutory Grant of Discretion

Where the statutes or regulations at issue in a case "are drawn in such broad terms that . . . there is no law to apply," courts have "no meaningful standard against which to judge the agency's exercise of discretion." *Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). "To determine whether there is 'law to apply' that provides 'judicially manageable standards' for judging an agency's exercise of discretion, the courts look to the statutory text, the agency's regulations, and informal agency guidance that govern the agency's challenged action." *Salazar*, 822 F.3d at 76. *See Chaney*, 470 U.S. at 834-35 (turning to the statute therein at issue to determine if "Congress has provided us with 'law to apply,'" instructing that if Congress "has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion, there is 'law to apply' under § 701(a)(2)"). *See also Department of Homeland Security v. Regents of the University of California*, --- U.S. ----, 140 S. Ct. 1891, 1906 (2020) (concluding that USCIS took affirmative action to create adjudications, thereby creating a program through which it

9

conferred affirmative immigration relief to eligible aliens, and that the "creation of that program—and its recission—is an 'action [that] provides a focus for judicial review"). "Agency regulations can provide a court with law to apply because 'where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures'"; "'[t]his is so even where the internal procedures are possibly more rigorous than otherwise would be required.'" *Salazar*, 822 F.3d at 76 (quoting in part *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)).[4]

As discussed herein, the lack of clear statutory authority granting DHS discretion to delay indefinitely the adjudication of a U Visa petition coupled with USCIS's very own rulemaking and guidance regarding the importance of swift adjudication compels this court to conclude that the pace at which USCIS adjudicates U Visas is not barred from judicial review under section 701(a).

Defendants begin their statutory analysis by citing 8 U.S.C. § 1252(a)(2)(B)(ii). For the purpose of context, the court reviews and quotes § 1252(a)(2)(B)(i) and (ii):

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, *no court shall have jurisdiction to review*—
>
> (i)      Any judgment regarding the granting of relief under sections 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii)     *any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security*, other than the granting of relief under section 1158(a) of this title.

---

[4] Even where an agency's discretion is unfettered at the outset, "if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, or an abuse of discretion.'" *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (quoting 5 U.S.C. § 706(2)(A)).

8 U.S.C. § 1252(a)(2)(B)(i), (ii) (emphasis added). Section 1252(a)(2)(B)(ii), generally regarded as a catchall jurisdiction-stripping clause, is not in and of itself the source of discretionary authority. The words "specified under this subchapter" refer to statutory specifications. *Kucana v. Holder*, 558 U.S. 233, 237 (2010). Therefore, the discretion Defendants claim to have must be specified somewhere other than in section 1252(a)(2)(B)(ii).

Defendants cite 8 U.S.C. § 1184(a) for support that "Congress did not prescribe a particular time limit within which U nonimmigrant adjudications must be completed," and assert that Congress gave DHS "discretion to establish regulations governing nonimmigrant admissions, including the adjudication of U nonimmigrant visa petitions." ECF No. 7 at 13. Section 1184(a) reads that "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe . . . ." Defendants contend that such discretion is "similar" to the discretion granted in 8 U.S.C. § 1255(a)).[5] However, as explained throughout this opinion, the court finds no support for concluding that Congress granted DHS unfettered discretion over the U Visa adjudication process such that USCIS could simply not adjudicate a petition.

---

[5] The court acknowledges that a court within this Circuit has found that 8 U.S.C. § 1255(a) "vests USCIS with discretion over the *entire* process of adjustment application adjudication," and, as such, "§ 1252(a)(2)(B)(ii) precludes judicial review of any 'action,' meaning any act or series of acts, included within the ongoing adjudication process and the pace at which that action proceeds." *Safadi v. Howard*, 466 F. Supp. 2d 696, 700 (E.D. Va. 2006) (reserving for another day the question whether "jurisdiction would exist in a district court to review plaintiff's case where USCIS refused to altogether process an adjustment application or where the delay was so unreasonable as to be tantamount to a refusal to process the application"). *Safadi* concerned a plaintiff's request for mandamus relief that the court compel USCIS to immediately adjudicate his application to adjust to permanent resident status. It did not address any contention regarding adjudication of plaintiff's request for an interim EAD under 8 U.S.C. § 274a.13(d). Nor is it clear that Defendants advocate here that section 1255(a) applies to trigger section 1252(a)(2)(B)(ii). *See* ECF No. 7 at 13.

Furthermore, to the extent Defendants rely on recent revisions to regulations to demonstrate a Congressional grant of deference that removes Defendants' actions or inaction from judicial review, the Supreme Court has held that section 1252(a)(2)(B)(ii) bars court review of discretionary decisions "only when Congress itself set out the Attorney General's discretionary authority in the statute"; the clause does not bar judicial review of decisions made discretionary by regulation. *Kucana*, 558 U.S. at 246-47. In other words, an agency cannot by regulation give itself discretion that Congress did not authorize.

Finally, the court notes the well-settled presumption favoring judicial review of administrative action. *Id.* at 251. As the *Kucana* court explained:

> When a statute is "reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." *Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 434, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995). We have consistently applied that interpretive guide to legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction. See, *e.g., INS v. St. Cyr,* 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); [*Reno v.*] *Catholic Social Services, Inc.,* 509 U.S. [43,] 63–64, 113 S.Ct. 2485 [(1993)]; *McNary* [*v. Haitian Refugee Center, Inc.*], 498 U.S. [479,] 496, 111 S.Ct. 888 [(1991)]. Because the "presumption favoring interpretations of statutes [to] allow judicial review of administrative action" is "well-settled," *Catholic Social Services, Inc.,* 509 U.S., at 63–64, 113 S.Ct. 2485 (quoting *McNary,* 498 U.S., at 496, 111 S.Ct. 888), the Court assumes that "Congress legislates with knowledge of" the presumption, *id.,* at 496, 111 S.Ct. 888. It therefore takes "clear and convincing evidence" to dislodge the presumption. *Catholic Social Services, Inc.,* 509 U.S., at 64, 113 S.Ct. 2485 (internal quotation marks omitted).

558 U.S. at 251-52. *See Regents of the University of California*, 140 S. Ct. at 1905 (considering the exception to judicial review set forth in section 701(a)(2) and noting that to "honor the presumption of review, we have read the [section 701(a)(2) exception] quite narrowly . . . confining it to those rare "administrative decision[s] traditionally left to agency discretion") (citation omitted). For these reasons, the court finds it has jurisdiction to consider Plaintiffs'

APA claim regarding USCIS's failure to adjudicate their U Visa petition. The court turns next to Defendants' arguments regarding USCIS's exercise of deference in issuing an EAD.

**B. 8 U.S.C. § 1184(p)(6) and 8 C.F.R. § 274a.13(d)**

As to requests for work authorization, Defendants reference 8 U.S.C. § 1184(p)(6), dating from December 2008, that DHS "may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." ECF No. 7 at 9. Defendants assert that whether to implement section 1184(p)(6) "was left entirely to the agency's discretion," and that DHS has elected not to exercise its discretion to implement the EAD process. ECF No. 7 at 14. First, the court is not convinced that the language in section 1184(p)(6) triggers the jurisdiction-stripping provision in clause (ii); second, the court finds that the regulation in effect at the time Plaintiff Agredano submitted his petition evidences that DHS had implemented the interim EAD process and had established time-requirements for issuing EADs, and that Plaintiffs should receive the benefit of that version of the regulation.[6]

1. Section 1184(p)(6)

As to the court's first concern, it notes the reasoning set forth in *Kucana*, wherein the Supreme Court determined, in studying the "character of the decisions Congress enumerated in § 1252(a)(2)(B)(i), thereby insulating them from judicial review," that the enumerated determinations "are substantive decisions . . . made by the Executive in the immigration context as a matter of grace, things that involve whether aliens can stay in the country or not." *Kucana*,

---

[6] The court notes that to support their argument Defendants rely on two recent opinions, *Gonzalez v. Cissna*, 364 F. Supp. 3d 579, 584 (E.D.N.C. 2019), *appeal docketed*, No. 19-1415 (4th Cir. Apr. 23, 2019), and *Patel v. Cissna*, 400 F. Supp. 3d 1373 (M.D. Ga. 2019), neither of which referenced or discussed 8 C.F.R. § 274a.13(d).

558 U.S. at 247-48 (describing the enumerated determinations as including "waivers of inadmissibility based on certain criminal offenses, § 1182(h), or based on fraud or misrepresentation, § 1182(i); cancellation of removal, § 1229b; permission for voluntary departure, § 1229c; and adjustment of status, § 1255"). The *Kucana* court was considering whether the district court could review a motion to reopen, which it determined was merely a procedural device and not "of a like kind" to the type of substantive determinations enumerated in clause (i). *Id.* Similarly, the work authorization that DHS may issue under section 1184(p)(6) is not an award of a final benefit. The nature of work authorization herein at issue is temporary, and is available only for an alien who has a "pending, bona fide application for nonimmigrant status." 8 U.S.C. § 1184(p)(6). If USCIS issues the work authorization, it can also later deny the petition and revoke the work authorization. The court finds *Kucana* instructive here and concludes that the issuance of an EAD under section 1184(p)(6) is not the sort of substantive decision that Congress intended to bar from judicial review under section 1252(a)(2)(B)(ii).

  2. Section 274a.13(d)

  As a second matter, the court considers the fact that DHS promulgated a rule that set for USCIS a specific pace for adjudicating EAD requests. As stated previously, section 274a.13(d) provided that "USCIS will adjudicate the [EAD] application within 90 days from the date of receipt of the application," and additionally that "[f]ailure to complete the adjudication within 90 days will result in the grant of an employment authorization document for a period not to exceed 240 days." 8 C.F.R. § 274a.13(d). The existence of this rule seems contrary to Defendants' dual positions that it has unfettered discretion with respect to whether it adjudicates EAD requests and that it has not implemented the procedure set forth in section 1184(p)(6).

Defendants acknowledge section 274a.13(d), but argue that the time requirement therein is irrelevant because revised section 274a.13(d) eliminates the 90-day pace of adjudication and the provision for issuance of an EAD, and petitions that were pending at the time of the rule change are subject to the revised rule.  ECF No. 7 at 16.  The court notes as an initial matter that the *Kucana* Court expressly rejected the notion that § 1252(a)(2)(B)(ii) applies to administrative decisions made discretionary by regulation, rather than administrative decisions made discretionary by statute.  558 U.S. at 252.  The Court explained that to hold otherwise would condone the Executive exercising a "free hand to shelter its own decisions from abuse-of-discretion appellate court review simply by issuing a regulation declaring those decisions 'discretionary.'"  *Id.*  The court cannot help but find that Defendants are advocating such an outcome here and declines to interpret revised section 274a.13(d) as evidence that USCIS has the discretion to elect not to adjudicate requests for work authorizations.[7]

Additionally, the court is not persuaded that the 90-day provision set forth in section 274a.13(d) has no bearing on Plaintiffs' claim.  Plaintiffs argue that Defendants are attempting to give retroactive effect to revised section 274a.13(d); Defendants contend they are not advocating for retroactive effect but rather asserting that the elimination of the 90-day adjudication period "moot[ed] Plaintiffs' claim under the former regulation."  ECF No. 7 at 16.  Regardless of how

---

[7] Indeed, DHS's commentary regarding revised section 274a.13(d) belies Defendants' position. In the commentary,  DHS acknowledged a range of public comments disagreeing with the proposal to eliminate the 90-day processing requirement for adjudicating EAD requests, including concern that eliminating the requirement would "lead to longer adjudication times." "Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers," 81 Fed. Reg. at 82456.  DHS responded that it had "carefully considered these concerns, but disagree[d] . . . that eliminating the 90-day processing time for [Forms I-765] . . . will cause . . . longer adjudication timeframes"; that "DHS believes that . . . Forms I-765 must be adjudicated within reasonable timeframes;" and that, "[a]lthough DHS is eliminating the 90-day processing timeframe for Forms I-765 from the regulatory text, USCIS continues to be committed to the processing goals it has established for Form I-765."  *Id.*

Defendants choose to characterize the nature of their argument, Plaintiffs were allegedly eligible

to receive an EAD 90 days after they applied for work authorization. "The principle that the

legal effect of conduct should ordinarily be assessed under the law that existed when the conduct

took place has timeless and universal appeal." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265

(1994) (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990)).

"Retroactivity is not favored in the law"; and the Supreme Court has instructed courts not to

construe "congressional enactments and administrative rules . . . to have retroactive effect unless

their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208

(1988)). "An administrative agency's power to promulgate regulations is limited to the authority

delegated by Congress"; and, as a general matter, statutory grants of rulemaking authority "will

not . . . be understood to encompass the power to promulgate retroactive rules unless that power

is conveyed by Congress in express terms." *Id.* at 208-09 (advising that "[e]ven where some

substantial justification for retroactive rulemaking is presented, courts should be reluctant to find

such authority absent an express statutory grant.").

In *Landgraf v. USI Film Prods.*, the Supreme Court established a two-step framework for

determining retroactivity:

> When a case implicates a federal statute enacted after the events in suit, the
> court's first task is to determine whether Congress has expressly prescribed the
> statute's proper reach. If Congress has done so, of course, there is no need to
> resort to judicial default rules. When, however, the statute contains no such
> express command, the court must determine whether the new statute would have
> retroactive effect, *i.e.,* whether it would impair rights a party possessed when he
> acted, increase a party's liability for past conduct, or impose new duties with
> respect to transactions already completed. If the statute would operate
> retroactively, our traditional presumption teaches that it does not govern absent
> clear congressional intent favoring such a result.

511 U.S. at 280 (stating that "[i]n the civil context, prospectivity remains the appropriate default

rule unless Congress has made clear its intent to disrupt settled expectations"). As to the first

inquiry, revised section 274a.13(d) is silent as to retroactivity and Defendants do not argue otherwise.[8]

As to the second inquiry, the court agrees with another court to address the very same question, which court determined that "applying the revised rule retroactively to Plaintiff's claim would 'tak[e] away or impair[] [Plaintiff's] vested rights acquired under existing laws.'" *Rodriguez v. Nielsen,* 16-cv-7092 (MKB), 2018 WL 4783977, at *17 (E.D.N.Y. Sep. 30, 2018) (quoting *Vartelas v. Holder*, 566 U.S. 257, 266 (2012)).  More specifically, the *Rodriguez* court wrote:

> Under the prior version of section 274a.13(d) Interim EAD, Plaintiff had the right to have his EAD application adjudicated within ninety days or receive an interim EAD. Plaintiff's right to an adjudication within ninety days vested when Plaintiff applied for an EAD, and his right to receive an interim EAD vested when USCIS failed to adjudicate his application within ninety days. *See Fernandez-Vargas [v. Gonzales*, 548 U.S. 30, 44 n.10 (2006)] (finding rights vest on the date a petitioner avails himself of them or "took action that enhanced their significance to him in particular"). The application of the revised section 274a.13(d), which removes both the ninety-day adjudication timeframe and issuance of the interim EAD, would strip Plaintiff of these vested rights.

*Rodriguez*, 2018 WL 4783977, at *18 (citing *Vartelas*, 566 U.S. at 266).

Defendants here, like the defendants in *Rodriguez*, argue that filing an application for an administrative benefit does not create a vested right in that benefit.  ECF No. 7 at 17-18.  And the

---

[8] Rather, USCIS's commentary regarding the revised rule states that the revised rule is effective January 17, 2017.  "Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers," 81 Fed. Reg. 82398 (Nov. 18, 2016).  *But see Landgraf*, 511 U.S. at 257 ("[a] statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date").  The entire commentary mentions retroactivity only once, with respect to Form I-140 petitions.  *Id.* at 82416-82417.  While this class of petitions is unrelated to the U Visa petition for the purpose of this lawsuit, it is nonetheless notable that USCIS specifies in the commentary that the changes promulgated relevant to that class of petitions will not apply retroactively, and, by way of explanation, notes the general "presumption against retroactive application of new regulations."  *Id.* (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988)).

court agrees that Plaintiffs have no vested right in receiving an EAD under section 1184(p)(6). However, and as the *Rodriguez* court found, because USCIS failed to adjudicate Plaintiffs' work authorization request within 90 days of their application, they had a right to receive an interim EAD under section 274a.13(d).  *Cf. Rodriguez*, 2018 WL 4783977, at *18 (finding that "Defendants conflate Plaintiff's lack of entitlement to this administrative benefit (an EAD) [under section 1184(p)(6)] with his entitlement to the nondiscretionary benefits provided under section 274a.13(d) Interim EAD (adjudication within ninety days or an interim EAD). Plaintiff did not apply for an interim EAD under section 274a.13(d), but, pursuant to that regulation, he has a right to an interim EAD because Defendants failed to adjudicate his EAD application within ninety days").

Defendants also argue that Plaintiffs could have "no 'reasonable reliance' or 'settled expectation' on the issuance of an interim work authorization document, as USCIS has never issued interim work authorization to individuals in his circumstances."  ECF No. 7 at 19.  Again, the court concurs with the reasoning in *Rodriguez* addressing the same contention: "Defendants offer no evidence that Plaintiff knew, or could have known, of this unstated USCIS policy such that he could not rely on the plain language of the statutory provision"; "[i]n any event, 'reasonable reliance' is 'not a necessary predicate for invoking the antiretroactivity principle.'" *Rodriguez*, 2018 WL 4783977, at *18 (quoting *Vartelas*, 566 U.S. at 273-74).[9]  For these reasons, the court finds that Plaintiffs have a vested right to have their EAD application adjudicated within 90 days or receive an interim EAD pursuant to section 274a.13(d).  *See id.*

---

[9] Defendants' arguments directed at whether Plaintiff Agredano's petition was "bona fide" so as to trigger the 90-day adjudication period, ECF No. 7 at 19-21, go to the merits of Plaintiffs' claim for interim work authorization and not whether the court has jurisdiction to consider the claim.

(citing *Fernandez-Vargas*, 458 U.S. at 44 n.10).  Because the application of revised section 274a.13(d) would strip Plaintiffs of this right, it would have a retroactive effect that Congress did not authorize.  *See id.*

In sum, with respect to processing U Visa applications, the court readily agrees that USCIS is authorized to act with discretion in adjudicating U Visa applications; the court disagrees that the discretion is unfettered.  The guidance found in both the regulations and informal agency commentary is sufficient for a court to determine whether USCIS has unreasonably delayed adjudicating a U Visa petition and, in Plaintiffs' case and in light of section 274a.13(d), whether USCIS failed to issue an interim EAD.

## II.     Failure to State a Claim

With respect to the substance of the APA claim, Defendants argue that Plaintiffs fail to state a claim because "USCIS has been (and continues to be) inundated with U visa petitions"; "Plaintiffs are in the same unfortunate but unavoidable positions as tens of thousands of other petitioners"; and, were the court to grant Plaintiffs the requested relief, the court "would essentially move [Plaintiffs] to the front of the line, necessarily moving others back."  ECF No. 7 at 2.  As to the due process claim, Defendants argue that Plaintiffs fail to establish that they have "a property or liberty interest at stake" with respect to the U Visa petition.  ECF No. 7 at 3.  Finally, Defendants move the court to dismiss Plaintiffs' claim for attorney fees under the Equal Access to Justice Act because Plaintiffs are not the prevailing parties.  *Id.*

Plaintiffs respond that they have sufficiently stated a claim under the APA by alleging that they are entitled to agency action, which the agency has unreasonably delayed, and that the delay has adversely affected Plaintiffs.  ECF No. 11 at 7-8.  Plaintiffs further respond that they sufficiently state a due process claim because they seek only a decision regarding placement on

the waitlist, not an award of the benefit; and that the court should maintain the EAJA claim

because should Plaintiffs prevail in this lawsuit, "they do not want Defendants attacking an

award of attorney's fees for lack of notice or pleading."  ECF No. 11 at 3.

### A.  Administrative Procedure Act

Defendants argue that "USCIS has not unreasonably delayed its U Visa waitlist

adjudication," and for support cite *Telecommunications Research and Action Center v. FCC*, 750

F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*").[10]  ECF No. 7 at 22.  As for work authorization,

Defendants argue that USCIS has not unreasonably delayed issuing an EAD because it has not

yet granted Plaintiffs' U Visa petition nor added them to the waitlist.  ECF No. 7 at 27 (citing 8

C.F.R. §§ 274a.12(a)(19)-(20), 214.14(d)(2), 274a.12(c)(14)).  As discussed above, Defendants

disagree that 8 U.S.C. § 1184(p)(6) presents a third means by which to obtain an EAD.  ECF No.

7 at 27.

As of the date Plaintiffs filed their Complaint, Plaintiff Agredano's application had been

pending for 35 months.  ECF No. 1 at 1.  Section 706 of the APA states that the reviewing court

"shall compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

Plaintiffs allege that USCIS has unreasonably delayed adjudication of their U Visa petition and

---

[10] In determining whether an agency has unreasonably delayed acting, courts often consider the six factors set forth in *TRAC*: "(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."  *Id.* (citation and quotation marks omitted).  *See South Carolina v. United States*, 907 F.3d 742, 759-60 (4th Cir. 2018).

unlawfully withheld issuance of an interim EAD and that they have been adversely affected or aggrieved as a result of the delay.  The court finds that the Complaint sufficiently states a claim to relief that is plausible on its face.  The court also finds that evaluation of the *TRAC* factors is better suited on a motion for summary judgment following review of an administrative record. The court denies Defendants' motion to dismiss the APA claim.

## B.  Procedural Due Process

Defendants argue that a U Visa application does not create a liberty or property interest that is protected by the Due Process Clause.  ECF No. 7 at 29.  Indeed, all parties agree that the issuance of a U Visa is discretionary.  Plaintiffs seek to distinguish a protected interest in receiving a determination on their petition from an interest in receiving a favorable determination, to which they acknowledge they have no claim.[11]  ECF No. 11 at 13-14.

When evaluating due process claims, courts consider (1) whether there is a property or liberty interest at stake, and (2) whether a process unconstitutionally deprived someone of that interest.  *See Stewart v. Bailey*, 7 F.3d 384, 392 (4th Cir. 1993).  A party who is unable to identify a property or liberty interest cannot successfully assert a due process claim.  *See Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002).  The mere expectation of a statutory or regulatory benefit is not enough, but a statute or regulation that grants an entitlement and "meaningfully" limits the discretion of those who provide the entitlement triggers constitutional protections.  *See id.* at 429–30.  Statutes and regulations that provide only discretionary relief do not create a property or liberty interest subject to the Due Process Clause.  *See id.* at 430.

---

[11] Plaintiffs' procedural due process claim is limited to adjudication of their U Visa petition and does not implicate Plaintiffs' request for work authorization.  *See* ECF No. 1 at ¶ 86; ECF No. 11 at 13-14.

U Visas are a discretionary form of relief. *See* 8 C.F.R. § 214.14(c)(4), (c)(5)(i) ("USCIS will determine, in its sole discretion, the evidentiary value of previously or concurrently submitted evidence, including Form I–918, Supplement B, 'U Nonimmigrant Status Certification.'"); 8 C.F.R. § 214.14(c)(5)(i) ("If USCIS determines that the petitioner has met the requirements for U–1 nonimmigrant status, USCIS will approve Form I–918."); *see also Maldonado-Guzman v. Sessions,* 715 F. App'x 277, 284 (4th Cir. 2017) (citing *Torres-Tristan v. Holder*, 656 F.3d 653, 656 n.3 (7th Cir. 2011) ("A person who meets the statutory criteria is only eligible for … a [U]-visa, [and is] not entitled to one as a matter of right."). For the purpose of deciding the jurisdictional question presented here, the court determined that Congress did not authorize Defendants with unfettered discretion so as to preclude judicial review of USCIS's action and inaction with respect to adjudicating U Visa petitions; however, the court did not find that Plaintiffs have a constitutionally protected interest in receiving a waitlist determination within a certain amount of time. Moreover, the decision to issue a U Visa is discretionary. Plaintiffs do not identify a protected interest with respect to when USCIS must adjudicate their petition. Accordingly, Defendants' motion to dismiss Plaintiffs' due process claim is granted.

## III.    Equal Access to Justice Act

Finally, Defendants argue the court should dismiss Plaintiffs' claim for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), because Plaintiffs are not prevailing parties. EAJA provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . , unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

A "prevailing party" is defined as "one who has been awarded some relief by the court." *Buckhannon Board & Care Home v. W.V. Dep't of Health and Human Res.,* 532 U.S. 598, 602 (2001). As Plaintiffs concede, they are not prevailing parties at this time. Additionally, according to the plain language of the statute, the award of fees and expenses to the prevailing party who so qualifies under EAJA is not discretionary. Therefore, Plaintiffs need not plead a claim under EAJA in order to preserve their right to seek those fees and expenses. Furthermore, the statute sets forth the procedure to follow for a party seeking an award of fees and expenses: the party shall submit an application within thirty days of the final judgment in the action. 28 U.S.C. § 2412(d)(1)(B). Plaintiffs may follow the guidance of the statute should they become prevailing parties. The court will dismiss the EAJA claim without prejudice.

## CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss is granted in part and denied in part. Defendants' motion to dismiss Plaintiffs' due process claim is granted and Defendants' motion to dismiss Plaintiffs' EAJA claim is granted. Defendants' motion to dismiss Plaintiffs' APA claim is denied.

**IT IS SO ORDERED.**

/s/Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

October 2, 2020
Charleston, South Carolina